### RYERSON *v.* PHELPS.

1. Intoxicating Liquors—Evidence—Civil-Damage Law.
   Evidence that plaintiff's husband procured intoxicating liquor of defendant through the agency of her minor son, who testified that he thought the husband took a drink at the time, with testimony that he was intoxicated on the same day and soon afterwards, that he was an habitual drunkard, and had been drinking for several days, warrants the submission to the jury of the question whether he drank any of the liquor provided by defendant.

2. SAME—DAMAGES—SHAME AND MORTIFICATION.

A request to instruct the jury, that if the defendant had stated in a sworn bill of complaint, filed by her, that her husband had been a drunkard since they were first married, and had committed acts of violence similar to the assault complained of in the declaration, she could not recover damages for mental anguish, loss of companionship, shame, etc., was properly refused, since it excluded her recovery for mental anguish, shame and mortification, growing out of the assault alleged in the pleading, and for the resulting disfigurement to plaintiff.

3. SAME—EXEMPLARY DAMAGES—CHARGE TO JURY.

That the trial court in his charge unduly emphasized the question of exemplary damages was not shown to be prejudicial where the verdict was small, and there was ample evidence warranting exemplary damages.

Error to Kalamazoo; Knappen, J. Submitted July 15, 1910. (Docket No. 164.) Decided November 11, 1910.

Case by Mary Ryerson against Emmet E. Phelps and the Michigan Bonding & Surety Company for the unlawful sale of intoxicating liquors to her husband. Judgment for plaintiff; defendants bring error. Affirmed.

*Frost & Farrell* and *A. F. Bunting*, for appellants.

*Jackson & Fitzgerald*, for appellee.

BLAIR, J. Defendant Phelps is the proprietor of a saloon in the city of Kalamazoo. The Michigan Bonding & Surety Company was the surety on his liquor bond from May 1, 1908, to April 30, 1909. Plaintiff has lived in the city of Kalamazoo for several years past. She was divorced from a former husband. Before she obtained this decree, plaintiff knew of Ryerson's drinking habits, as he boarded with her. In August, 1905, she married her present husband, Ryerson. From the time of his marriage to her, Ryerson has been in the habit of getting intoxicated and abusing plaintiff and her son. In 1907, plaintiff began divorce proceedings against Ryerson,

alleging the excessive use of intoxicating liquors, of profane and indecent language, and physical punishment of the worst kind. At that time, Ryerson was confined in the Detroit house of correction for an assault and battery.

When he returned, he contributed nothing to plaintiff's support, and did not live with her for nearly a year. He returned to plaintiff's home in the latter part of July, 1908. From that time until Thanksgiving, he did not get drunk as often as before, but soon returned to his old ways. During this time, plaintiff occasionally drank beer with her husband. On March 8, 1909, an 18-year old son of plaintiff went to defendant Phelps, at the request of Ryerson, and purchased a half pint of whisky, which was delivered to Ryerson. This was in the forenoon. In the evening, Ryerson came home drunk, and an affray occurred in which he struck plaintiff several times with his fist, tearing "the lower edge of her ear loose and otherwise injuring her." The jury found a verdict for plaintiff for $629.50, and defendants bring the record to this court for review. The errors relied upon for a reversal will be considered in the order of their presentation in defendants' brief.

1. "As the case stood when the motion to direct a verdict for defendant was denied, there was an entire absence of testimony showing that Ryerson drank any of the liquor alleged to have been furnished by defendant Phelps."

The only direct testimony as to Ryerson's drinking any of the liquor sold by Phelps came from plaintiff's son (who delivered the bottle to him at about 11 o'clock in the forenoon), to the effect that he thought Ryerson took a drink at that time, but could not say for sure. Plaintiff testified that, when he came home to dinner a little after noon, he was under the influence of liquor, and the testimony tended to show that he was an habitual drunkard, and had been drinking for several days. Under such circumstances, we do not think the court would have been justified in directing a verdict on this ground.

2. Defendants' argument in support of this point is as follows:

" The proofs plainly showed that in July, 1907, plaintiff began suit against her husband for divorce, in which suit she charged him with acts of drunkenness and personal violence almost identical with those charged in the present case.    These were all admitted to be true by plaintiff.    Defendants requested the court to charge the jury as follows:

(9)  " ' I further instruct you that if you find from the evidence in this case that plaintiff did, on or about the 3d day of July, A. D. 1907, file her sworn bill of complaint in proceedings for a divorce from her husband, Wyley W. Ryerson, charging him with acts of drunkenness and personal violence, such as are complained of in the present case, and therein alleging that said acts had continued ever since their said marriage, then you are not at liberty to allow plaintiff any damages for mental anguish, loss of companionship, or for the shame and mortification attendant upon the transaction.'

" This request, which was denied, ought to have been given the jury.    *Johnson* v. *Schultz*, 74 Mich. 75 (41 N. W. 865)."

The court, among other things, instructed the jury as follows:

" I further instruct you that, if you find from the evidence in this case that plaintiff's husband had been in the habit of getting intoxicated ever since the time of his marriage to plaintiff, then you are not at liberty to assess defendant anything for injury to plaintiff's feelings caused by the alleged shame and mortification plaintiff suffered growing out of his intoxication in this case in question. * * * As to the actual damages, you will determine whether or not she was assaulted or injured, and you will give to her, if you find all the other facts as I have stated them to you to have been proven by the evidence, that amount which will compensate her.    That is the theory of the law; that is what juries are for, if you come to the question of damages, to compensate one party for something that is due from the other.    How much do you think she has suffered by being injured about the face and ear, the pain and suffering, the shock, the damage to property, and suffering that may have been sustained by

reason of the publication of it, the remarks of people, exclusion from society, and anything of that kind that she has shown, would come under the head of actual damages.     *     *     *     I further instruct you that if you find from the evidence that plaintiff did, on or about the 3d day of July, 1907, file her sworn bill of complaint in proceedings for a divorce from her husband, Wyley Ryerson, charging him with acts of drunkenness and personal violence, such as are complained of in the present case, and therein alleging that said acts had continued ever since their said marriage, then you have a right to consider that admission or statement on her part for what it is worth, for the purpose of determining how much mental anguish, shame, and mortification this subsequent act produced upon her mind, if it did any."

The defendants' request excluded from the consideration of the jury as a basis for damages any mental anguish, shame, or mortification growing out of the assault and battery, with its attendant injuries to, and disfigurement of, plaintiff's person, causing remarks by strangers in street cars and other public places and wide notoriety through publication in the public press. The court did not err in refusing to give the request.

3. " In his charge to the jury, the court practically directed a verdict for plaintiff, and in addition made it almost impossible for the jury to render any verdict without including in the same some amount as exemplary damages."

We do not think the charge is subject to the criticism that it practically directed a verdict, and very little stress is laid upon this contention in defendants' brief. The principal complaint under this head is that the court erred in the manner of submitting the question of exemplary damages. As to this, counsel say in their brief:

" Our principal contention is, not that the court has incorrectly stated the law governing the case, but that by recurring to the question of exemplary damages so often, by calling them by that term no less than a dozen times, and by emphasizing that particular part of the case, when as a matter of fact, there was no evidence of any wilful

intent and no evidence from which any could be legally inferred, except that defendant Phelps knew of the fact that plaintiff was the wife of the person to whom he sold the liquor, the court has unduly impressed and biased the jury by the charge and rendered them unfit to reach a proper conclusion."

In view of the moderate verdict rendered by the jury, and the abundant support in the testimony for a verdict including exemplary damages, it is not apparent how defendants were prejudiced by the charge in this regard. At all events, we do not think that any such undue emphasis was placed upon this subject by the court as to warrant a reversal of the judgment.

The judgment is affirmed.

BIRD, C. J., and OSTRANDER, HOOKER, and STONE, JJ., concurred.